2007-NMCA-086

167 P.3d 935

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**John Marcus NEAL, Defendant–Appellant.**

No. 26,108.

Court of Appeals of New Mexico.

June 20, 2007.

Gary K. King, Attorney General, Santa Fe, NM, Ralph E. Trujillo, Assistant Attorney General, Albuquerque, NM, for Appellee.

Law Offices of Nancy L. Simmons, P.C., Nancy L. Simmons, Albuquerque, NM, for Appellant.

## OPINION

WECHSLER, Judge.

{1} This case requires us to determine whether the district court had jurisdiction to revoke Defendant's probation. Resolution of this issue depends on the application of NMSA 1978, § 31–20–5(B) (2003). Section 31–20–5(B)(2) provides that if a defendant's parole is revoked, "the period of parole served in the custody of a correctional facility shall not be credited as time served on probation." The appeal involves two separate sentences, arising from two separate convictions. The essential issue is whether Defendant's failure to successfully complete parole in one case tolled the time for bringing a probation revocation petition in the second case. If it did, the time for revoking probation was extended, and the district court had jurisdiction. If it did not, the time for revoking probation had run, and the district court was without jurisdiction to take action in the second case.

{2} The State argues that Defendant's failure to successfully complete parole in one case meant that he was not entitled to a credit against his probation in the second case, thereby extending the period in which the district court had jurisdiction to revoke probation. Defendant argues that Section 31–20–5(B) only applies to a single case and a single sentence and does not apply to a situation, like this one, in which a defendant has more than one sentence running at the same time. We conclude that the legislature intended Section 31–20–5(B) to apply, whether a defendant has a single sentence or multiple sentences. Consequently, we affirm the district court's determination that it had jurisdiction to revoke Defendant's probation. We also address arguments concerning credit for time in which Defendant was a fugitive, double jeopardy, admissibility of evidence, and several arguments raised pursuant to *State v.*

*Franklin,* 78 N.M. 127, 428 P.2d 982 (1967). We reverse the denial of credit for time served on probation for approximately two months during which the State alleged Defendant was a fugitive. We affirm on all other grounds.

## FACTS

{3} Essentially, this appeal is about a defendant who was the subject of two cases, who was given clemency in the two cases, through parole and probation, and who continued to falter. Eventually, after a period of several years, the district court revoked probation. Defendant argues that the district court's order revoking probation came too late because his probationary period had been served. We review the tangled procedural history of the two cases because understanding Defendant's conduct and the structure of his sentences is necessary to understand the issues.

### A. DEFENDANT'S FIRST CASE, NO. 827

{4} The relevant history began January 8, 2001, when Defendant was convicted of unlawful taking of a motor vehicle in CR–2000–827 and was given a deferred sentence. We refer to this case as "No. 827."

### B. DEFENDANT'S SECOND CASE, NO. 406

{5} In 2002, Defendant found new trouble. On September 30, 2002, he pleaded no contest to theft of a credit card and larceny in CR–2002–406. We refer to this case as "No. 406."

### C. COMBINING OF BOTH CASES IN A NEW SENTENCE

{6} In deciding the sentence in No. 406, the district court considered both of Defendant's cases. The district court sentenced Defendant to eighteen months, followed by one year on parole. The district court then suspended the sentence and ordered Defendant to be placed on probation. The district court also ordered that the sentence in No. 406 be served consecutively to the sentence previously imposed in No. 827. As part of his plea, Defendant agreed that if he did not complete his sentence in the new case, No. 406, he would be subject to habitual-offender enhancement.

{7} On November 25, 2002, the district court dealt with both cases again. In No. 406, it entered an order of probation. In No. 827, it revoked the deferred judgment, entered judgment, and placed Defendant on probation.

### D. REVOCATION OF DEFENDANT'S PROBATION IN NO. 827 AND INCARCERATION

{8} It was not long until Defendant faltered again. On April 30, 2003, the State filed a petition, in both cases, to revoke probation. Also on April 30, 2003, the State filed a supplemental criminal information seeking habitual-offender enhancement in No. 406. The State filed an amended petition to revoke probation on May 9, 2003 in No. 406. On May 19, 2003, the district court revoked Defendant's probation in No. 827.

{9} On May 27, 2003, apparently because Defendant's probation had been revoked in No. 827 and he had been committed to the penitentiary, the State filed a nolle prosequi on the supplemental information. The nolle prosequi stated that it was without prejudice and that the State would refile the supplemental information if Defendant again violated his plea agreement. Defendant was incarcerated in No. 827.

### E. PAROLE IN NO. 827

{10} On November 7, 2003, Defendant was paroled in No. 827.

### F. VIOLATION IN NO. 827

{11} On October 26, 2004, Defendant violated the conditions of his parole in No. 827. A retake warrant was issued on November 9, 2004. Defendant was arrested on this warrant on January 12, 2005, when he attempted to shoplift ribeye steak and chicken from a Safeway store in Colorado. Defendant's parole was revoked on February 7, 2005, and he was again incarcerated.

### G. MOTION TO REVOKE PROBATION IN NO. 406

{12} On May 3, 2005, the State filed yet another petition to revoke probation in No. 406. The State also refiled the supplemental criminal information seeking habitual-offender enhancement. In June 2005, the State filed an amended petition to revoke probation based on Defendant's failure to provide a current address, among other violations, and then a second amended petition to revoke probation based on Defendant's attempt to shoplift, among other violations.

### H. DEFENDANT'S MOTION TO DISMISS THE PROBATION REVOCATION PETITION IN NO. 406

{13} This chain of events brings us to the primary legal issue in this appeal. Defendant filed a motion to dismiss the petition to revoke probation in No. 406, contending that it was untimely. He argued that he received an eighteen-month sentence in No. 406 and had been given thirty-eight days pretrial confinement credit. He argued that the parole period in No. 827 ran concurrently with the probation period in No. 406. That period began running when he was paroled on November 7, 2003. Using these calculations, he contended that his probation in No. 406 expired on March 30, 2005 (eighteen months, less thirty-eight days, from November 7, 2003). Therefore, he argued, it was too late to revoke probation. Moreover, having completed his sentence in No. 406, Defendant argued that it was also too late to seek habitual-offender enhancement.

{14} In response, the State argued that the sentence in No. 406 was to be served consecutively to the sentence in No. 827. The State argued that even if Defendant's parole in No. 827, and probation in No. 406, were running at the same time, Defendant is not entitled to credit for time when Defendant was incarcerated. This argument, as well, relies on Section 31–20–5(B), which Defendant argues does not apply to a sentence like Defendant's and only applies when a defendant is serving a single sentence.

{15} The district court denied Defendant's motion to dismiss the probation revocation petition. The district court reasoned that Defendant was receiving credit against his probation in No. 406 from November 7, 2003, the date he was paroled in No. 827, until November 9, 2004, when the retake warrant was issued by the parole division director. The district court would not allow Defendant credit for time from November 9, 2004, through January 12, 2005, when Defendant was an absconder. Thus, the district court determined that Defendant was entitled to approximately one year of credit against his probation in No. 406. The district court noted that Defendant's parole had been revoked and he was currently incarcerated. The district court calculated that Defendant had approximately six months of probation remaining to be served upon his release from prison. Therefore, Defendant's sentence in No. 406 had not been completely served, and the district court still had jurisdiction over the petition to revoke probation. After a hearing on the merits, the district court revoked Defendant's probation and imposed a new sentence.

### STANDARD OF REVIEW

{16} This case requires us to determine whether Section 31–20–5(B) applies to this case. Our review is de novo. *See State v. Baca*, 2005–NMCA–001, ¶ 9, 136 N.M. 667, 104 P.3d 533 (stating that the construction of a sentencing statute is a question of law).

### SECTION 31–20–5

{17} As a general matter, Defendant is correct that a court has no jurisdiction to revoke probation after the probationary term has been served. *See State v. Travarez*, 99 N.M. 309, 311, 657 P.2d 636, 638 (Ct.App.1983). The district court in this case reasoned that, based on Section 31–20–5(B), Defendant's probation in No. 406 had not been completed. The statute provides:

B. If a defendant is required to serve a period of probation subsequent to a period of incarceration:

(1) the period of probation shall be served subsequent to any required period of parole, with the time served on parole credited as time served on the period of probation and the conditions of probation imposed by the court deemed as additional conditions of parole; and

(2) in the event that the defendant violates any condition of that parole, the parole board shall cause him to be brought before it pursuant to the provisions of Section 31–21–14 NMSA 1978 and may make any disposition authorized pursuant to that section and, if parole is revoked, the period of parole served in the custody of a correctional facility shall not be credited as time served on probation.

Section 31–20–5(B)(1)–(2). The statute expresses the sensible principle that a paroled defendant is entitled to credit against probation only for the time the defendant is successfully on parole.

{18} The parties agree that Defendant's probationary period in No. 406 began to run on November 7, 2003, when he was paroled. Defendant contends that his probationary period in No. 406 ran continuously until his probationary period ended on March 30, 2005 and was unaffected by the revocation of parole in No. 827. His argument is that Section 31–20–5(B) applies only to a single sentence and does not apply to a sentence, like his, that contains multiple sentences. He argues that Section 31–20–5(B), and his failure on parole in No. 827, do not toll his probationary period in No. 406.

{19} Our task in construing a statute is to determine legislative intent. *Baca,* 2005–NMCA–001, ¶ 9, 136 N.M. 667, 104 P.3d 533. We read the statute as a whole and "look to the function of a particular statute within a comprehensive legislative system." *Id.* We interpret statutes "to facilitate and promote the legislature's accomplishment of its purpose." *State v. Rivera,* 2004–NMSC–001, ¶ 12, 134 N.M. 768, 82 P.3d 939 (internal quotation marks and citation omitted). We also consider the history and background of the statute. *Id.* ¶ 13.

{20} Defendant's claim that his violation of parole cannot, as a matter of law, affect the probation period simultaneously running in another case, is not persuasive. There is nothing in the statute that supports that view. Defendant argues that the statute applies to "a single sentencing in a single case," and therefore it cannot apply when there is more than one crime and more than one sentence. Section 31–20–5(A) begins by stat-

ing that "[w]hen a person has been convicted of *a crime* for which *a sentence* of imprisonment is authorized," a defendant may be placed on probation. (Emphasis added.) But the fact that a statute does not list items as plural does not necessarily establish that it does not apply to the plural. *State v. Baker,* 90 N.M. 291, 293, 562 P.2d 1145, 1147 (Ct. App.1977) (holding, in construing a sentencing statute, that the fact that the sentence was worded in the singular did not mean it did not also apply to the plural); NMSA 1978, § 12–2A–5(A) (1997) (stating, in the Uniform Statute and Rule Construction Act, that "[u]se of the singular number includes the plural"). Nor does the statute's failure to expressly address multiple sentences running at the same time mean that the statute does not apply. *See Inv. Co. of the Sw. v. Reese,* 117 N.M. 655, 661, 875 P.2d 1086, 1092 (1994) ("It is futile to expect statutory codes . . . to anticipate every eventuality."); *Cerrillos Gravel Prods., Inc. v. Bd. of County Comm'rs,* 2004–NMCA–096, ¶ 15, 136 N.M. 247, 96 P.3d 1167 ("The Legislature often enacts laws with a broad sweep, and cannot be fairly expected to expressly address every eventuality."), *aff'd,* 2005–NMSC–023, 138 N.M. 126, 117 P.3d 932.

{21} We consider the meaning and purpose of a statute as part of an overall scheme. *See Rivera,* 2004–NMSC–001, ¶ 13, 134 N.M. 768, 82 P.3d 939. A review of the sentencing statutes indicates that the legislature knows that prisoners sometimes have multiple sentences running at the same time. For example, the legislature is aware that defendants sometimes are convicted and are on probation or parole, commit a new crime, and receive a new sentence in addition to the old one. *See* NMSA 1978, § 31–18–21(B) (1977). In that circumstance, the legislature has provided that the new sentence should be consecutive to the old one, unless otherwise ordered by the court. *Id.* Consequently, Defendant's situation, involving multiple offenses and multiple sentences, is not uncommon, and the legislature was aware that defendants may have multiple sentencing tracks running at the same time. If the legislature intended such a sentence, like Defendant's, to be excluded from the provisions

of Section 31–20–5(B), it could easily have said so. We believe the legislature did not expressly exclude a sentence like Defendant's because it meant for the simple principle expressed in Section 31–20–5(B)—that a defendant gets credit toward his probationary period only when he is compliant with conditions of parole—to apply in all cases. We are not persuaded that the legislature would abandon this common sense principle and consider it more important that the sentences were in two cases, rather than one. We will not read the statute in the technical way Defendant suggests, absent some clear expression of legislative intent.

{22} Additionally, Defendant's construction of the statute is inconsistent. Under Section 31–20–5(B), Defendant received credit against his probationary period in No. 406 for time successfully on parole in No. 827. However, having failed on parole, Defendant then argued that the burden imposed by the statute—denial of credit for unsuccessful time—does not apply to his probationary period in No. 406. His argument fragments his sentence, isolating each sentence from the other. Under Defendant's view, the district court could not consider his probation or parole violation in one case, and his misconduct would have no impact whatsoever on his probationary term in the second case. With Defendant's interpretation, the probationary period in his second case would simply run to its conclusion, unaffected by his failure to comply with conditions of probation that applied in both of his cases.

{23} We doubt that the legislature intended to hamstring a sentencing court in this way, and we find Defendant's argument unpersuasive. In the probation context, our cases have allowed district courts broad authority to impose and revoke probation and have not fragmented sentences in technical ways. For example, we have given district courts jurisdiction to revoke probation even when the defendant has not yet begun the probationary part of his sentence. *See State v. Martinez,* 108 N.M. 604, 607, 775 P.2d 1321, 1324 (Ct.App.1989) (holding that the court had jurisdiction to revoke probation even though the defendant was on parole and had not yet begun to serve his probation);

*State v. Padilla,* 106 N.M. 420, 421–22, 744 P.2d 548, 549–50 (Ct.App.1987) (holding that a defendant's probation could be revoked even though he was still incarcerated and had not yet begun to serve his probationary period). We have declined to conclude that a district court has lost jurisdiction to revoke probation once the case is on appeal. *Rivera,* 2004–NMSC–001, ¶ 27, 134 N.M. 768, 82 P.3d 939 (rejecting the defendant's argument that, after the notice of appeal was filed, his probation was stayed and therefore the district court had no jurisdiction). We have allowed district courts broad authority to impose probation, as well. *Baca,* 2005–NMCA–001, ¶¶ 16–21, 136 N.M. 667, 104 P.3d 533 (rejecting an interpretation of Section 31–20–5(A) that would have shortened the probationary period and would have allowed a defendant to parlay multiple and repeated probation violations into an argument that his probationary period had already been served).

{24} *Baca* addresses a different issue arising under a different subsection of Section 31–20–5, but it is analogous. In *Baca,* the defendant received a suspended sentence, but his probation was revoked four times. *Baca,* 2005–NMCA–001, ¶ 2, 136 N.M. 667, 104 P.3d 533. He spent some time incarcerated and on release. *Id.* ¶ 3. Finally, after the fourth revocation of probation, the district court imposed a three-year sentence. *Id.* ¶ 4. The defendant contended that, if all his time on probation was added together, he had already served five years on probation. *Id.* He argued that the district court therefore lost jurisdiction to revoke his probation. *Id.* He argued that the original five-year period of probation should be allowed to run to its conclusion, no matter how many times he had violated his probation. *Id.* ¶ 19. We rejected that argument. *Id.* We held that the five-year limit in Section 31–20–5(A) did not preclude the district court from revoking probation and imposing a new sentence. *Baca,* 2005–NMCA–001, ¶ 19, 136 N.M. 667, 104 P.3d 533. We declined to adopt a restrictive view of the statute that would shorten the allowable time in which to pursue a probation violation and that would limit the sentencing court's ability to retain jurisdiction over an offender. *Id. Baca* is like our

case, in that the defendant was given multiple chances on probation, and ultimately failed. *Id.* ¶¶ 2–4. We declined to adopt a construction of Section 31–20–5(A) that would allow the defendant in *Baca* to parlay his repeated chances, and repeated failures, into a successful argument that the time had run and the district court no longer had jurisdiction to address a probation violation. *Id.* ¶ 19. We believe the same rationale is applicable in this case.

{25} In short, technical arguments that a court has lost jurisdiction to impose or revoke probation have not met with success. Instead, our cases have focused on the need for the court to have broad discretion to supervise a defendant. *See Rivera*, 2004–NMSC–001, ¶ 21, 134 N.M. 768, 82 P.3d 939 (stating that Section 31–20–5 is "indicative of the Legislature's intent to give trial courts broad discretion to sentence defendants to probationary terms and strictly monitor their compliance with an eye toward the goal of prompt and effective rehabilitation"). Consistent with this principle, courts are "afforded broad discretion in fashioning sentences appropriate to the offense and the offender." *State v. Sinyard*, 100 N.M. 694, 697, 675 P.2d 426, 428 (Ct.App.1983). Our cases have also expressed the principle that probation is an act of clemency and, accordingly, have granted courts broad authority to revoke probation. *State v. Lopez*, 2007–NMSC–011, ¶ 12, 141 N.M. 293, 154 P.3d 668 (construing NMSA 1978, § 33–2–39 (1889) to give the sentencing court broad jurisdiction to revoke probation because that construction was consistent with the principles that probation is an act of clemency and a sentencing court must have broad power to monitor a probationer's rehabilitation); *Padilla*, 106 N.M. at 422, 744 P.2d at 550.

{26} The policies expressed in *Lopez* are applicable in this case. Here, the district court attempted to fashion sentences appropriate to Defendant, and his sentences were consistently treated as a package by the district court. Each time Defendant committed a new crime, and each time he failed on probation, the district court considered all of the facts, in both cases, to arrive at a new disposition appropriately tailored to Defen-

dant. Defendant was content to have both cases considered together for sentencing purposes. In 2002, for example, when he was charged with two new felonies, he worked out a plea bargain that considered his prior 2001 conviction and sentence. He accepted the benefits granted by Section 31–20–5(B) of having both cases treated together and receiving credit on parole on No. 827 and probation in No. 406 simultaneously, when it was to his advantage. Now that it is not to his advantage, however, he argues that the fact that there are two sentences precludes the district court from applying Section 31–20–5(B).

{27} Given these facts, the language of the statute, and our case law, we cannot agree with Defendant that his probationary period in No. 406 should now be considered as a distinct track, so separate that it is not affected by his parole violation in No. 827. We believe that it is also appropriate to conclude that his failure in No. 827 affects his probation in No. 406 because Defendant knew that he had to avoid further scrapes with the law and had to comply with the terms of his probation in both cases. Defendant could not have reasonably believed that violating the law and other probation conditions would have no impact on his other case. *See Lopez*, 2007–NMSC–011, ¶ 18, 141 N.M. 293, 154 P.3d 668 ("[W]e do not see how a defendant sentenced to probation could reasonably believe that violating the law and other probation conditions would have no impact on subsequent probation sentences.").

{28} For all of these reasons, Section 31–20–5(B) applies to Defendant's case, and therefore he was not entitled to credit against his probationary period in No. 406 once he was incarcerated for a parole violation in No. 827. Accordingly, his probationary period in No. 406 did not continue to run uninterrupted and did not expire on March 30, 2005. The district court still had jurisdiction when it revoked probation on September 20, 2005, because Defendant had not completed his probationary period in No. 406.

## CREDIT FOR TIME AS A FUGITIVE

{29} The district court denied Defendant credit against his probation for the period from November 9, 2004 until January 12,

2005, finding that he was an "absconder." Defendant argues that he is entitled to credit for this period of time because the State did not show that a warrant for his arrest could not have been served. We agree with Defendant.

{30} Under NMSA 1978, § 31–21–15(C) (1989), "[i]f it is found that a warrant for the return of a probationer cannot be served, the probationer is a fugitive from justice." The State bears the burden of proving that the defendant is a fugitive. *See State v. Thomas*, 113 N.M. 298, 300, 825 P.2d 231, 233 (Ct.App.1991), *overruled on other grounds by State v. Jimenez*, 2004–NMSC–012, ¶ 11, 135 N.M. 442, 90 P.3d 461. A fugitive is not entitled to probation credit from the date of the violation to the date of arrest. *See Jimenez*, 2004–NMSC–012, ¶ 8, 135 N.M. 442, 90 P.3d 461. Sections 31–21–15(B) and (C), read together, require that "all time served on probation shall be credited unless the defendant is a fugitive." *Jimenez*, 2004–NMSC–012, ¶ 8, 135 N.M. 442, 90 P.3d 461 (internal quotation marks and citation omitted). "A defendant is entitled to credit for any time on probation, unless the State can show either (1) it unsuccessfully attempted to serve the warrant on the defendant *or* (2) any attempt to serve the defendant would have been futile." *Id.* This test attempts to balance the competing policies of preventing defendants from benefitting from absconding, and requiring the state to diligently prosecute defendants who have violated probation. *Id.* We review the district court's finding on this issue to determine if it is supported by substantial evidence. *Id.* ¶ 14.

{31} Our cases have made it clear that the state must ordinarily prove that it issued a warrant for the probationer's arrest and entered it in the National Crime Information Center (NCIC) database in order to support a finding of fugitive status. *See id.* ¶¶ 3, 15 (holding that the defendant was not a fugitive when the state obtained a bench warrant but did not introduce evidence that it entered the warrant in the NCIC database or that it attempted to serve the defendant with the warrant); *Thomas*, 113 N.M. at 302, 825 P.2d at 235 (holding that the defendant was not a

fugitive because the mere issuance of a warrant, without any evidence that the warrant was entered in the NCIC database, and without any showing that the state made any effort to locate or serve the defendant, is insufficient). In *State v. Apache*, 104 N.M. 290, 291, 720 P.2d 709, 710 (Ct.App.1986), there was evidence that the state entered the warrant into the NCIC database and attempted to locate the defendant at his last known address and by going to his sister's house. We held that the state's effort was sufficient. *Id.* at 292, 720 P.2d at 711.

{32} In this case, there was substantial evidence from which the court could find that the State entered the retake warrant into the NCIC database. Terry Mesa, Defendant's probation officer, testified that the retake warrant was issued out of the Interstate Compact Office of the parole division. She said she "believe[d] it [was] entered into NCIC just like any other normal warrant would be." We consider this evidence sufficient for the district court to conclude that the warrant was entered in the NCIC database.

{33} However, we have not been able to find any evidence in the record indicating that the State attempted to serve the warrant or that Defendant's location was unknown during the period in question. Although the State asserts that "attempts were made to contact the Defendant at his last known address and telephone number," the State has not introduced any evidence to that effect. An allegation unsupported by evidence is not sufficient. The State also asserts that "the State had no idea where Defendant was because he had changed addresses without informing his probation officer." While Defendant admitted that he moved without informing his probation officer on October 26, 2004, nothing in the record indicates whether the probation officer had knowledge of Defendant's location during the relevant time period of November 9, 2004 to January 12, 2005. The State cites a portion of the testimony that indicates that Defendant violated his probation by failing to obtain permission to move from his probation officer. But it appears from the record that this failure transpired even earlier, on Octo-

ber 20 or 25, 2004. It also appears from the record that Defendant was arrested on October 25, 2004. Evidence that Defendant failed to inform his probation officer of his current address in October does not support an inference that the probation officer was unaware of his location during a period beginning in November, particularly given the fact that Defendant was arrested in the interim. As we have stated, the record is silent on the question of whether the probation officer was aware of Defendant's location, or made any attempt to determine Defendant's location, during the period in question.

{34} At a minimum, the state must present some evidence that "raises a reasonable inference that the warrant could not be served with reasonable diligence." *Thomas,* 113 N.M. at 302, 825 P.2d at 235. The State's showing is insufficient to support a finding that it would have been futile for the State to attempt to serve Defendant. Therefore, we reverse the district court's conclusion that Defendant is not entitled to credit against his probation for the period between November 9, 2004 and January 12, 2005. Because Defendant's probation had nonetheless not expired, this conclusion does not affect our determination that the district court had jurisdiction to proceed.

## HABITUAL–OFFENDER ENHANCEMENT

{35} Defendant makes several arguments challenging his habitual-offender enhancement. He argues that, since his probation had run in No. 406, he had completed his sentence, and therefore it is too late to impose the enhancement. Our holding that his probation had not run answers that contention. Additionally, in his plea agreement, Defendant agreed that he would be subject to habitual-offender enhancement. For this reason, as well, there is no double jeopardy problem. *See State v. Villalobos,* 1998–NMSC–036, ¶¶ 10–13, 126 N.M. 255, 968 P.2d 766 (holding that a defendant on probation after serving the basic sentence had no reasonable expectation of finality in his sentence, especially because the defendant agreed in his plea bargain that if he violated the terms of his suspended sentence, he would be subject to habitual-offender enhancement).

## EVIDENCE

{36} Defendant contends that certain evidence should not have been admitted. We review the district court's evidentiary rulings for an abuse of discretion. *State v. Woodward,* 121 N.M. 1, 4, 908 P.2d 231, 234 (1995). Although Defendant acknowledges that the rules of evidence do not apply to probation revocation hearings, Defendant nonetheless argues that his due process rights were violated because State's Exhibits 2–8 were erroneously admitted.

{37} Below, Defendant objected to many of the exhibits, arguing that they were irrelevant. His argument was that they related to No. 827, not to No. 406. The district court ruled that the sentence in No. 827 was relevant and necessary to calculate the probationary period in No. 406. We agree. As we have discussed, the two cases were linked, and the probationary period in No. 406 could not be calculated without knowing the history of Defendant's other case.

{38} Exhibit 8 was the amended order of probation in No. 406. It was admissible as a court document and public record, and Defendant did not object to Exhibit 8 below. *See* Rule 11–803(H) NMRA; *State v. Varela,* 1999–NMSC–045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (requiring a defendant to lodge a timely objection to preserve a claim of error).

{39} Defendant also objected that the various documents lacked foundation. The documents were admitted through Ms. Mesa, Defendant's probation officer. The exhibits were a certificate of parole in No. 827, showing Defendant's parole date (Exhibit 1); an offender violation report from Colorado (Exhibit 2); a retake warrant issued by the parole division (Exhibit 3); a letter to an institutional parole officer from the interstate compact administrator (Exhibit 4); a letter from the administrator to the parole board chairman containing the administrator's opinion that Defendant should not receive credit for a certain period of time (Exhibit 5); a notice of preliminary parole revocation hearing served on Defendant (Exhibit 6); and a notice of parole revocation issued by the

parole board and signed by Defendant (Exhibit 7). Defendant argued that foundation was lacking because Ms. Mesa did not personally prepare the documents.

{40} The district court did not abuse its discretion in admitting these documents. The foundation necessary for admission of the documents is that they were what the proponent claimed them to be. *See* Rule 11–901(A) NMRA. They were all documents kept and relied on by the department of corrections. Ms. Mesa gathered them and knew what they were. Defendant argued that a proper foundation was not established because Ms. Mesa was not the author of the documents. In this case, that evidence is not required. *See Apodaca v. AAA Gas Co.*, 2003–NMCA–085, ¶ 58, 134 N.M. 77, 73 P.3d 215 (rejecting a claim that foundation was not established because the author of a report was not identified, when the appellant did not establish that the identity of the author was necessary to establish relevancy). To the extent that they were public records, they were admissible. *See* Rule 11–901(B)(7). We conclude that an adequate foundation was established.

{41} Defendant also argues that he was denied due process when a letter to Adam Gonzales containing Edward Gonzales's opinion on whether Defendant was entitled to credit for time between November 9, 2004 and January 25, 2005 was admitted. We fail to see a due process violation. The admission of an opinion by a parole administrator within the department of corrections did not deny Defendant a fair hearing. It was for the district court to determine whether Defendant was entitled to credit when he absconded, and the district court did so. We see no indication that the district court was swayed by what appears to be an isolated reference to Defendant's lack of entitlement to credit. *See State v. Duran*, 107 N.M. 603, 608, 762 P.2d 890, 895 (1988) (stating that to establish a due process violation, a defendant must demonstrate prejudice).

{42} Finally, Defendant contends that he was denied his right to cross-examine the adverse witnesses on the issue of whether he violated probation because there was no non-hearsay evidence presented about his failure to report to his Colorado probation officer. Defendant admits that the State presented non-hearsay evidence that he shoplifted from a Safeway store. Defendant was able to cross-examine the security officer who testified that he saw Defendant shoplift. Furthermore, Defendant admitted that he "moved and failed to provide his probation officer with a new address." The case Defendant relies on, *State v. Vigil*, 97 N.M. 749, 751, 643 P.2d 618, 620 (Ct.App.1982), addresses only whether hearsay evidence was sufficient when no non-hearsay evidence was presented. As we have stated, in order to establish a violation of due process, a defendant must show prejudice. *Duran*, 107 N.M. at 608, 762 P.2d at 895. Furthermore, *Vigil* indicates that hearsay evidence may be used in probation revocation hearings if it has probative value. *Vigil*, 97 N.M. at 752, 643 P.2d at 621. The hearsay evidence in this case clearly did have probative value. We therefore see no due process violation in the admission of the State's evidence.

## OTHER ARGUMENTS

{43} Defendant makes other arguments, relying on *Franklin*, 78 N.M. at 129, 428 P.2d at 984. He argues that it violated double jeopardy to use his shoplifting offense to also revoke probation and parole. But this action is not a violation of double jeopardy. *See In re Lucio F.T.*, 119 N.M. 76, 77–80, 888 P.2d 958, 959–61 (Ct.App.1994) (holding that double jeopardy is not implicated by probation revocation proceedings because they are not "directed at attempting to punish the original criminal activity" but rather determine whether probation should continue).

{44} Defendant contends that the district court should have accepted his proposed findings and conclusions. The district court was not required to do so, and we assume the district court rejected Defendant's view of the case. *Landskroner v. McClure*, 107 N.M. 773, 775, 765 P.2d 189, 191 (1988) (stating that the failure of a district court to make a finding of fact is regarded as "a finding against the party asserting the affirmative").

{45} Finally, Defendant contends that the prosecutor committed misconduct based on a

lack of candor to the court. Defendant argues that the prosecutor's "utter lack of knowledge of the law dealing with probation violations" showed a lack of candor. He also argues that the prosecutor's legal argument missed what he contends are certain key distinctions. We disagree. We will not assume a lack of candor from the sole fact that the prosecutor's legal arguments diverged from those of Defendant.

## CONCLUSION

{46} For all of these reasons, we affirm the revocation of Defendant's probation. We reverse the denial of credit for time served during the period the State alleged Defendant was a fugitive.

{47} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Chief Judge, and MICHAEL D. BUSTAMANTE, Judge.