This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                          **NO. 29,698**

**DUSTY BAKER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Karen Parsons, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

Defendant appeals from the judgment and order revoking his probation. The district court determined that Defendant was "an absconder" from June 27, 2006 to December 23, 2008, and therefore he was not entitled to credit for time served on probation during that time. Defendant contends the State presented insufficient evidence to support the district court's finding that he was "a fugitive," because the State did not meet its burden of showing reasonable diligence in serving a bench warrant on Defendant. We agree with Defendant and reverse.

**Procedural and Factual Background**

On July 1, 2005, Defendant was charged with one count of burglary of a vehicle and one count of possession of drug paraphernalia. Defendant entered a no contest plea on October 22, 2005. On December 8, 2005, the district court entered a conditional discharge order placing Defendant on probation for a period of two and a half years. The order of probation filed on January 24, 2006, provided that Defendant was to remain under probation supervision until April 20, 2008. As conditions of probation, among others, Defendant was prohibited from possessing a firearm and using illegal substances. On May 4, 2006, the State filed a petition to revoke Defendant's probation, asserting that Defendant was in possession of a firearm, possessed a marijuana pipe and other drug paraphernalia, had tested positive for marijuana, and had admitted to using marijuana. On May 8, 2006, a bench warrant

2

was issued for Defendant's arrest, with 108 Chelsea, Ruidoso, New Mexico, listed as Defendant's address. Defendant was arrested on May 9, 2006. A teletype printout copy shows that this arrest warrant was entered into the National Crime Information Center (NCIC) database.

At the hearing on May 17, 2006, Defendant pled no contest to violating his parole. On June 5, 2006, the district court filed the judgment and order, vacating the conditional discharge and continuing Defendant's probation, which was, as mentioned above, to expire on April 20, 2008. As one of the conditions of probation, the district court ordered Defendant to enter an in-patient drug treatment program called Villa De Esperanza in Carlsbad, New Mexico. Defendant testified that on June 8, 2006, prior to traveling to Carlsbad, he reported to Lincoln County Probation Officer John Lund in Ruidoso and gave him an address where he planned to stay after completing rehabilitation, his future mother-in-law's address at 912 Sandia Street, Carlsbad, New Mexico. Ms. Katie Cuellar, another probation officer in Ruidoso, testified that the inter-office computer system showed that prior to going to Villa De Esperanza on June 8, 2006, Defendant checked in with the Carlsbad probation office. Defendant testified that he gave the Carlsbad office the 912 Sandia, Carlsbad, New Mexico address. That same day at about 2 p.m., Defendant checked into the Villa De Esperanza program in

Carlsbad. Later that same day, at about 7 p.m., Defendant checked himself out of Villa De Esperanza, leaving a handwritten note:

> I apologize for wasting your valuable time checking me in. I appreciate you trying to help me. I just feel that the reason I haven't gotten stoned since I got out of jail is because of my family, the people who love me and care about me. I think this is a great place. I think you are doing wonderful jobs by helping people get there [sic] lives straightened out[,] but it is not for me. I have all the support I need with my daughter and fiancee and [G]od. I am on my way back to Ruidoso to check back in with my probation officer. Thank you again. [Signature of Defendant] P.S. Everything that was yours is still here thanks again wish me luck.

The next day, June 9, 2006, Defendant called the Villa De Esperanza program and asked to be readmitted, but he was told he had forfeited his place. Defendant also indicated that he was waiting to hear back from his attorney. On June 12, 2006, an employee of Villa De Esperanza faxed a copy of Defendant's letter and a summary of his contact with the program to the probation department in Ruidoso, attention Katie Cuellar and John Lund. The cover page of the fax contains a handwritten address and telephone number at the upper right corner: 912 Sandia Street, 885-6617.

On June 13, 2006, Ms. Cuellar and Mr. Lund went to Defendant's listed address in Ruidoso: 108 Chelsea, Ruidoso, New Mexico. The residence was vacant and Ms. Cuellar requested a bench warrant. On June 22, 2006, the State filed a petition to revoke Defendant's probation. The petition attaches Ms. Cuellar's probation violation report, which shows Defendant's listed address as 108 Chelsea, Ruidoso, New

4

Mexico, and states that Defendant had left the court-ordered treatment program at Villa De Esperanza. Ms. Cuellar also reported her impressions that:

> The Defendant is clearly unconcerned regarding the status of his probation. The Defendant violated conditions of his probation with no regard. He clearly is not a good candidate for probation as he refuses to comply with court orders.

On June 26, 2006, a bench warrant for Defendant's arrest was issued. The return page is blank. After leaving the court-ordered treatment program, Defendant did not check in with the probation office in Ruidoso or Carlsbad.

The next entry in the record proper after the bench warrant dated June 26, 2006, is Defendant's letter filed pro se in this case on December 22, 2008, requesting discovery. In the letter, Defendant lists his address as P.O. Box 339, Carrizozo, New Mexico 88301. On December 23, 2008, Defendant was arrested for violating his probation. At the initial hearing on December 31, 2008, Defendant denied violating his probation. At the hearing on the petition to revoke on February 13, 2009, Defendant admitted that he left the treatment program, and he pled no contest to violating his probation, reserving for a later hearing the issue of whether Defendant had been a fugitive and whether the State had made reasonable efforts to locate Defendant and serve the second bench warrant on him during the period from June 27, 2006 to December 23, 2008. On March 20, 2009, these issues were addressed. On May 8, 2009, a sentencing hearing was held. On June 8, 2009, the district court filed

a judgment and order imposing sentence, but suspending incarceration and placing Defendant back on probation with the additional term of "Zero Tolerance." The district court expressly found that Defendant "was an absconder from June 27, 2006 to December 23, 2008[.]" Defendant received no probation credit for that period and he received incarceration credit of one day. [Id.] Defendant appeals.

**The Parties' Arguments**

Defendant argues there was insufficient evidence for the district court to determine that he was a fugitive, that the State did not make reasonable efforts to serve the bench warrant on him or show that any attempt to serve the warrant would have been futile, and therefore the district court erred in denying him credit for time served on probation from June 27, 2006 to December 23, 2008. In addition, Defendant contends that the district court erred in focusing on Defendant's failure to report and in concluding that the State had shown reasonable efforts at service when the record before it established that the State had contact information that it ignored and there was no evidence that the warrant was entered into the NCIC database. The State contends that sufficient evidence was presented for the district court to determine that Defendant had absconded, because he had not fulfilled his probation requirements and therefore he had not earned probation credit for the time from June 27, 2006 to December 23, 2008.

**Standard of Review and Applicable Law**

NMSA 1978, Section 31-21-15(C) (1989) provides as follows:

> If it is found that a warrant for the return of a probationer cannot be served, the probationer is a fugitive from justice. After hearing upon return, if it appears that he has violated the provisions of his release, the court shall determine whether the time from the date of violation to the date of his arrest, or any part of it, shall be counted as time served on probation.

"[T]he district court's decision regarding whether the defendant is entitled to credit or is instead a fugitive will be affirmed only if the decision is supported by substantial evidence." *State v. Jimenez*, 2004-NMSC-012, ¶ 14, 135 N.M. 442, 90 P.3d 461. Under Section 31-21-15(C), "[i]f it is found that a warrant for the return of a probationer cannot be served, the probationer is a fugitive from justice." "A fugitive is not entitled to probation credit from the date of the violation to the date of arrest." *State v. Neal*, 2007-NMCA-086, ¶ 30, 142 N.M. 487, 167 P.3d 935. The state bears the burden of proving that the defendant is a fugitive. *Id.* Thus, "[a] defendant is entitled to credit for any time on probation, unless the State can show either (1) it unsuccessfully attempted to serve the warrant on the defendant *or* (2) any attempt to serve the defendant would have been futile." *Id.* ¶ 30 (internal quotation marks and citation omitted). This test balances the competing policy goals of preventing defendants from avoiding the consequences of their probation by absconding, and requiring the state to act with due diligence in prosecuting defendants who violate the

7

terms of their probation. *Jimenez*, 2004-NMSC-012, ¶ 8; *see State v. Murray*, 81 N.M. 445, 450, 468 P.2d 416, 421 (Ct. App. 1970)).

Our case law recognizes the importance of the state's entry of the warrant into the NCIC database, which allows participating law enforcement agencies nationwide to check the criminal history of any person stopped, as important evidence that the state acted with due diligence in attempting to locate and serve the warrant on a defendant. Thus, we have affirmed the district court's conclusion that Defendant was a fugitive when "the trial court found that the arrest warrant was issued and placed in the normal channels for service." *State v. Apache*, 104 N.M. 290, 292, 720 P.2d 710, 711 (Ct. App. 1986). One of the normal channels for service is the entry of the warrant into the NCIC database. *Id.* at 291, 720 P.2d at 710. In *Jimenez*, moreover, our Supreme Court confirmed that the state's failure to enter the warrant into the NCIC database "weighs heavily against a finding that the State acted with due diligence." 2004-NMSC-012, ¶ 15. In *Neal*, however, where the defendant's probation officer testified that "the retake warrant was issued out of the Interstate Compact Office of the parole division[,]" and she said she "believe[d] it [was] entered into NCIC just like any other normal warrant would be[,]" we concluded that there was substantial evidence from which the district court could conclude that the warrant

8

was entered in the NCIC database. 2007-NMCA-086, ¶ 32 (alterations in original) (internal quotation marks omitted).

Besides showing that the warrant was entered into the NCIC database, the state must show that it attempted to serve the defendant with the warrant, or that any attempt to serve the defendant would have been futile. *Jimenez*, 2004-NMSC-012, ¶ 15; *see, e.g.*, *State v. McDonald*, 113 N.M. 305, 307, 825 P.2d 238, 240 (Ct. App. 1991) (holding that a defendant was a fugitive within the meaning of Section 31-21-15(C), and properly denied credit against his sentence when the defendant could not be taken into custody under authority of the warrant because he was incarcerated in Arizona). In *Apache*, for example, the state's efforts were sufficient where the probation officer testified that the warrant was listed with the NCIC; there was specific evidence of record concerning the state's efforts to locate the defendant, such as testimony from the probation officer concerning attempts to locate the defendant at his sister's house and at his last known address; and a police officer testified that, after the warrant was issued, a bulletin was sent to the most recent address available for the defendant, and, when no response was received, a second bulletin was sent to the same town six months later. *Apache*, 104 N.M. at 291-92, 720 P.2d at 710-11.

In contrast, in *State v. Thomas*, we held that the state did not sustain its burden of proving that the defendant was a fugitive, because the state made "absolutely no showing concerning what efforts, if any, were made to locate [the] defendant or to serve the warrant at any time during a period exceeding one year." 113 N.M. 298, 302, 825 P.2d 231, 235 (Ct. App. 1991), *overruled on other grounds by Jimenez*, 2004-NMSC-012. We pointed out that the mere issuance of a warrant, without any evidence that the warrant was entered in the NCIC database, and without any showing that the state made any effort to locate or serve the defendant, was insufficient. *Id.* We observed that "the mere issuance of a warrant, coupled with a lack of service, for whatever reason, [does not] raise[] a reasonable inference that the warrant could not be served with reasonable diligence." *Id.*

Similarly, in *Neal*, we agreed with the defendant that the state had not made sufficient efforts to locate him and serve the warrant. 2007-NMCA-086, ¶ 29. The state had merely asserted, without making an evidentiary showing, that "attempts were made to contact the [d]efendant at his last known address and telephone number." *Id.* ¶ 33 (internal quotation marks omitted). The State also asserted that "the State had no idea where [the d]efendant was because he had changed addresses without informing his probation officer." *Id.* (internal quotation marks omitted). We noted, in particular, that "the record is silent on the question of whether the probation officer

10

was aware of [the d]efendant's location, or made any attempt to determine [the d]efendant's location, during the period in question." *Id.* ¶ 33. "At a minimum, the state must present some evidence that raises a reasonable inference that the warrant could not be served with reasonable diligence." *Id.* ¶ 34 (internal quotation marks and citation omitted). Since the state had not shown that it even attempted to serve the defendant with the warrant or that his location was unknown, we held that the State's showing was insufficient to support a finding that it would have been futile for the state to attempt to serve the defendant. *Id.* ¶¶ 32-34.

In summary, our case law provides that in order to support a finding of fugitive status, the state must show that it issued a warrant for the probationer's arrest and entered it into the NCIC database, and that the state unsuccessfully attempted to serve the warrant on the defendant or that any attempt to serve the defendant would have been futile in the sense that the warrant could not be served with reasonable diligence. *Id.* ¶¶ 31-34. We do not believe that the State has sustained its burden of making such a showing in this case.

**Analysis**

In this case, the parties dispute whether the State entered this second bench warrant into the NCIC database. Defendant points out, and we have confirmed, that at the hearing on Defendant's fugitive status, Ms. Cuellar testified only that the

warrant was entered into CMIS, an internal record-keeping system utilized by the Probation and Parole Department, and that the State presented no testimony or evidence that it was entered into the NCIC database. As mentioned above, the record proper includes a teletyped printout of an NCIC report showing entry of the warrant issued on Defendant's first probation violation into the database. The State acknowledges the record proper does not contain an NCIC report showing that the second warrant was entered into the NCIC database. In the answer brief, appellate counsel argues that the language of the second warrant shows that the State intended to extradite Defendant "anywhere in the [c]ontinental United States" and, therefore, the State intended that the warrant would be entered into the NCIC system. Appellate counsel also contends that the district court could reasonably infer that the second warrant was entered into the NCIC database, or that, in any case, there is no indication that routine procedures of entering an arrest warrant into NCIC were not followed.

At the hearing on Defendant's fugitive status, however, the State's only witness, Ms. Cuellar, Defendant's probation officer in Ruidoso, presented no evidence that the second warrant was entered into the NCIC database. As mentioned above, no printout copy of an NCIC entry for the second warrant appears in the record proper, and none was provided to the district court, or to the defense. Our review of the testimony confirms that Ms. Cuellar testified that she referred to an inter-office computer

system, not the NCIC database, to determine that Defendant had checked in at the Carlsbad probation office prior to reporting to Villa De Esperanza. Unlike in *Neal*, there was no testimony or other evidence from which the district court could reasonably infer that the second warrant had been entered into the NCIC database, in fact or in the regular course of business. Argument of appellate counsel in the answer brief about the State's intentions and assertion by appellate counsel that there is no indication that routine procedures of entering an arrest warrant into NCIC were *not* followed, is not sufficient when it is the State's burden to show Defendant's fugitive status. *See, e.g.*, *State v. Cochran*, 112 N.M. 190, 192, 812 P.2d 1338, 1340 (Ct. App. 1991) ("Argument of counsel is not evidence."). The lack of evidence regarding entry of the second warrant into the NCIC database weighs heavily against the State.

Ms. Cuellar testified that prior to requesting a bench warrant, she went to Defendant's listed address in Ruidoso and found it vacant. After the warrant was issued on June 26, 2006, until Defendant's arrest on December 23, 2008, however, the State made no efforts to locate Defendant or serve him with the warrant, other than to occasionally ask Defendant's mother, a secretary in Ruidoso, if he was around. Thus, the State made no showing that it attempted to serve the warrant, *after* the warrant was issued, over the following year and a half.

13

The record does indicate, however, that the Ruidoso probation officers had an address and telephone number for Defendant in Carlsbad. The Villa De Esperanza fax cover sheet sent to Ms. Cuellar and Mr. Lund on June 12, 2006, noted the Carlsbad address and telephone number in the upper right corner. Ms. Cuellar received the fax and knew about the fax cover sheet information and the handwritten note is evident, because she referred to them and their contents in her June 13, 2006, probation violation report. Nevertheless, in response to defense questions as to whether she made any efforts, or asked Carlsbad probation officers to make any efforts to locate Defendant at the Carlsbad address and telephone number, Ms. Cuellar simply testified that she did not work in Eddy County and did not do field contacts in Eddy County. She also testified, however, that she knew that Defendant had family in Ruidoso and had reported in at the Carlsbad office prior to going to Villa De Esperanza on June 8, 2006. Under the circumstances, reasonable diligence required that after issuing the bench warrant, the Ruidoso probation office personnel would at least telephone the Carlsbad probation office personnel and ask them to attempt to locate Defendant and serve the warrant at the Carlsbad address, as well as periodically attempt to locate Defendant and serve the warrant in Ruidoso and in Carlsbad over the following year and a half.

It was the State's burden to prove that it made reasonable efforts to locate and serve Defendant with the warrant or that any attempt would have been futile. We hold that one visit to Defendant's address in Ruidoso—before a warrant was issued—and informal inquiries directed to Defendant's Mother is not sufficient evidence to support the district court's decision that the State met its burden.

Finally, the district court's oral ruling and the district court's judgment indicate that the district court judge was persuaded that Defendant was an "absconder," i.e., he had violated the conditions of his probation, rather than that the State had provided substantial evidence that Defendant was a "fugitive," as required by Section 31-21-15(C), and the New Mexico case law discussed above.

> He's already admitted to the violation by pleading no contest. I'm going to find that although the department could have done more to try to locate him, they did enough. It was his obligation to—he knew he was on probation—it's his obligation to check in. He said he was going to check in. I think maybe had he not done that, said he was coming back to Ruidoso, it might be a little bit tougher to decide. But he said he was coming back to Ruidoso, they check in Ruidoso. Any representation he made where he might be was before he was supposed to be at Villa De Esperanza, so I'm going to find that the Bench Warrant should stand and that he should be considered an absconder as of the date it was issued.

*See Jimenez*, 2004-NMSC-012, ¶ 10 (discussing that "[t]he State's use of the word "absconder" refers to [the d]efendant's failure to report for probation"). As such, while the initial sentence of the district court's ruling indicates that the district court was aware that it is the State's burden to show Defendant's fugitive status, the facts

the district court relied upon in determining that the State "did enough" all relate to what *Defendant did not do*, rather than how *what the State did that was "enough."* As such, these facts support the conclusion that Defendant violated his probation by checking himself out of the court-ordered Villa De Esperanza program without completing it, and by not reporting to the probation office in Ruidoso or Carlsbad thereafter. *See, e.g.*, *Jimenez*, 2004-NMSC-012, ¶ 12 (rejecting the state's argument that for a defendant's probation to be legally effective, he had to report to the probation office, open his file, and sign a probation order, and not having performed these acts, the defendant did not serve any time on probation and is not entitled to any credit for time served; and holding instead that the defendant was constructively on probation from the date of his sentencing). These facts do not indicate, however, that the State provided substantial evidence that it attempted to serve the warrant on Defendant or that it was futile to do so. Merely going to Defendant's listed residence in Ruidoso and finding it vacant *prior to* requesting a bench warrant is not enough. We hold that under the circumstances of this case the State failed to show that Defendant was a "fugitive" during his probationary period within the meaning of Section 31-21-15(C).

**CONCLUSION**

Since the State failed to meet its burden and Defendant's probation period ended on April 20, 2008, prior to the most recent December 31, 2008 to June 8, 2009, probation revocation proceedings in district court, the district court no longer had jurisdiction to determine that Defendant violated his probation in these proceedings. *See Neal*, 2007-NMCA-086, ¶ 17; *see also State v. Lara*, 2000-NMCA-073, ¶ 12, 129 N.M. 391, 9 P.3d 74 ("[T]he [district] court is without jurisdiction to enter an order of unsatisfactory completion after the probation period ends.").

Accordingly, we reverse and remand this case to the district court to vacate the June 8, 2009, judgment, and issue Defendant a certificate of satisfactory completion of probation.

**IT IS SO ORDERED.**


_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**


_____

**CELIA FOY CASTILLO, Judge**


_____

**ROBERT E. ROBLES, Judge**

17