IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2024-NMCA-062

Filing Date: July 15, 2024

No. A-1-CA-40816

STATE OF NEW MEXICO,

    Plaintiff-Appellant,

v.

JOSEPH L. GONZALES,

    Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Robert A. Aragon, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Leland M. Churan, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Mallory E. Harwood, Assistant Appellate Defender
Santa Fe, NM

for Appellee

OPINION

**IVES, Judge.**

**{1}**     The State appeals the district court's order granting Defendant Joseph Gonzales's pretrial motion to dismiss one of two counts of possession of a firearm by a felon in violation of NMSA 1978, Section 30-7-16 (2022) based on double jeopardy principles. We consider two questions. The first is whether our Legislature intended to categorically authorize a separate conviction and punishment for each firearm in every case under Section 30-7-16, or if it instead intended for courts to determine, based on the facts of each case, whether the defendant engaged in distinct acts of possession that warrant a separate conviction and punishment for each firearm. After applying the

requisite canons of statutory construction, we are left with a reasonable doubt about whether the Legislature intended to categorically allow a separate conviction and punishment for each firearm in every case, and we therefore conclude that Section 30-7-16 is insurmountably ambiguous with respect to the unit of prosecution. *See State v. Benally*, 2021-NMSC-027, ¶¶ 13-15, 493 P.3d 366. Applying the rule of lenity, we hold that courts must determine on a case-by-case basis whether defendants may be convicted and punished separately for each firearm. *See id.* ¶ 16. That is, separate convictions and punishments under Section 30-7-16 are only allowed if the facts of the case indicate that the defendant engaged in distinct acts of possession. This brings us to the second question: whether the district court erred by concluding—before trial and based only on the facts in the State's criminal complaint—that Defendant did not engage in distinct acts of possession. We conclude that Rule 5-601(C) NMRA, as well as *State v. Foulenfont*, 1995-NMCA-028, 119 N.M. 788, 895 P.2d 1329, and its progeny, barred the district court from resolving the issue based on the limited record before it. We therefore reverse.

## BACKGROUND

{2}     On January 14, 2022, Agent Timothy Hughte of the Gallup Police Department, along with members of the Narcotics Division and Emergency Response Team, executed a search warrant at Defendant's residence. After locating Defendant and detaining him, the officers proceeded to search the home, locating two firearms in the master bedroom. The first, a "black . . . Glock 43 (9mm) handgun" with "custom purple inlay lettering" and a legible serial number "was found in a top dresser drawer." The second firearm, "a black . . . Smith and Wesson M&P (9mm) handgun," was found under the bed. This weapon had "custom red inlay lettering," a laser attachment, was loaded, and had no legible serial number. After conducting a background check, Agent Hughte determined that Defendant had been convicted of a felony within the last ten years and had completed probation within the past year. Defendant was subsequently charged with two counts of possession of a firearm by a felon.

{3}     Defendant moved to dismiss one of the two counts pretrial, pursuant to Rule 5-212 NMRA and *Foulenfont*, 1995-NMCA-028, for violating his right to be free from double jeopardy. In his motion to dismiss, Defendant stipulated to the facts set out by Agent Hughte in the criminal complaint, attaching a copy of the complaint to his motion. At the hearing on Defendant's motion to dismiss, however, the State refused to stipulate to the facts in its complaint. The parties did not present, or ask to present, further evidence at the hearing. Although the district court initially denied Defendant's motion in an oral ruling, the court ultimately reversed course and entered a written order granting the motion. The State appeals.

## DISCUSSION

**I.      Section 30-7-16 Is Insurmountably Ambiguous as to the Unit of Prosecution**

**{4}**     The State argues that the plain language of Section 30-7-16 categorically defines the unit of prosecution: each firearm supports a separate conviction and punishment. The State further contends that the legislative history, legislative purpose, and quantum of punishment under the statute support this conclusion. Defendant argues that the statute's plain language does not define the unit of prosecution, and that the legislative history, purpose, and quantum of punishment do not provide any additional clarity. Because Defendant contends that the statute's unit of prosecution is insurmountably ambiguous, he maintains that the rule of lenity should be applied in his favor. For the reasons that follow, we agree with Defendant.

**{5}**     The double jeopardy clauses of the United States and New Mexico constitutions "protect defendants against multiple punishments for the same offense." *State v. Alvarez-Lopez*, 2004-NMSC-030, ¶ 38, 136 N.M. 309, 98 P.3d 699; *see* U.S. Const. amend. V; N.M. Const. art. II, § 15. We review double jeopardy claims de novo. *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747.

**{6}**     "Multiple punishment problems can arise from both 'double-description' claims, in which a single act results in multiple charges under different criminal statutes, and 'unit-of-prosecution' claims, in which an individual is convicted of multiple violations of the same criminal statute." *State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289. In unit of prosecution cases like this one, we attempt to determine "whether the [L]egislature intended punishment for the entire course of conduct or for each discrete act." *Swafford v. State*, 1991-NMSC-043, ¶ 8, 112 N.M. 3, 810 P.2d 1223. In order to ascertain the legislative intent, we apply a two-step analysis. *See Benally*, 2021-NMSC-027, ¶ 12.

**{7}**     The first step requires us to determine "whether the Legislature has defined the unit of prosecution," *id.* ¶ 13 (internal quotation marks and citation omitted)—that is, whether it has defined "[t]he number of separate acts that may be prosecuted under one criminal statute." *State v. Sena*, 2016-NMCA-062, ¶ 8, 376 P.3d 887. To do so, we consider "all markers of legislative intent"; these include "the wording, structure, legislative history, legislative purpose, and quantum of punishment prescribed under the statutory scheme." *Benally*, 2021-NMSC-027, ¶ 13. If, after applying the relevant canons of statutory construction, "we are able to decipher the Legislature's intended unit of prosecution, then our inquiry is complete." *Id.* ¶ 14. However, if the unit of prosecution remains "insurmountably ambiguous," we apply the rule of lenity and "construe the statute in favor of the defendant." *Id.* (internal quotation marks and citation omitted). "[L]enity is reserved for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute." *Id.* ¶ 15 (internal quotation marks and citation omitted).

**{8}**     If the rule of lenity applies, we move to the second step of the unit of prosecution analysis. Our task is then to "determine whether a defendant's acts are separated by sufficient indicia of distinctness to justify multiple punishments under the same statute." *Id.* ¶ 17 (internal quotation marks and citation omitted).

## A.    Plain Language

**{9}**    We look first to the plain language of the statute. *See State v. Olsson*, 2014-NMSC-012, ¶ 18, 324 P.3d 1230 ("The plain language of the statute is the primary indicator of legislative intent."). Section 30-7-16(A) states, in pertinent part, that "[i]t is unlawful" for "a felon" to "possess a firearm." Because the statutory text refers to "*a* firearm," the State contends that "[t]he use of a singular term is dispositive of the unit of prosecution." For the reasons that follow, we are not persuaded and hold that the statute's plain language is ambiguous.

**{10}**    As an initial matter, the State's argument is premised on the idea that the word "a" indicates a singular object. The State distinguishes "*a* firearm" from the use of "*any* firearm" in the prior version of the statute, arguing that the use of "any" previously indicated a plural object. Therefore, according to the State, when the Legislature changed the language of the statute from "any" to "a," it changed the object from plural to singular, making clear that it intended to allow a separate conviction and punishment for each firearm.

**{11}**    We do not believe the State's parsing of the statute is supported by New Mexico law. Indeed, our Supreme Court rejected a very similar argument in *Olsson*, concluding that the Legislature's use of "any" in the statute criminalizing possession of child pornography did not provide clarity regarding the unit of prosecution. 2014-NMSC-012, ¶ 21. The statute at issue in *Olsson* makes it a crime to possess "'any obscene visual or print medium.'" *Id.* ¶ 19 (quoting NMSA 1978, § 30-6A-3(A) (2007, amended 2016)). The Court highlighted the variety of ways in which "any" could be interpreted to mean either singular or plural, and the Court ultimately held that the word "any" only "compound[ed] the ambiguity" of the statute and did not provide clarity on the intended unit of prosecution. *Id.* ¶ 21.

**{12}**    The dissent concludes that "any" must be plural and "a" must be singular, relying heavily on our Supreme Court's decision in *State v. Ramirez*, 2018-NMSC-003, 409 P.3d 902. *See dissent* ¶¶ 40-45. We do not think *Ramirez* supports the dissent's conclusion. In *Ramirez*, our Supreme Court suggested that if the Legislature had used the phrase "a child" instead of "any child," the unit of prosecution for child abuse would be "by child." *Id.* ¶ 53. Critically, however, the Court explained that its reasoning applied to crimes defined in relation to human victims: "It is well established . . . that where a statute prohibits the doing of some act to *a victim* specified by a singular noun, 'a person for example, then 'the person' is the unit of prosecution." *Id.* (emphasis added). In our view, this reasoning does not apply when, as in this case, the statute at issue does not prohibit doing an act to a victim but instead prohibits possession of an object. We therefore do not construe *Ramirez* as overruling *Olsson* or calling its holding into question. And, under *Olsson*, the word "any"—when used to define the unit of prosecution for possession of a number of items, such as child pornography or firearms—is ambiguous.

**{13}** We therefore decline to conclude that the Legislature intended for the word "any" to be plural in the context of the felon in possession statute. We conclude instead that the use of "any" in the previous version of Section 30-7-16 only contributes to the ambiguity of that version, making it impossible to draw any inference about the current unit of prosecution based on the Legislature's change from "any firearm" to "a firearm."

**{14}** However, even if we assume that "a" is singular and "any" is plural, the distinction between plural and singular is not dispositive as to the unit of prosecution. *See State v. Torres*, 2022-NMSC-024, ¶ 22, 521 P.3d 77 ("[T]he use of singular or plural language is not always dispositive as to legislative intent."); *State v. Neal*, 2007-NMCA-086, ¶ 20, 142 N.M. 487, 167 P.3d 935 ("[T]he fact that a statute does not list items as plural does not necessarily establish that it does not apply to the plural."). This conclusion is supported by the Uniform Statute and Rule Construction Act (USRCA), NMSA 1978, §§ 12-2A-1 to -20 (1997). Specifically, Section 12-2A-5(A) of the USRCA states that the "[u]se of the singular number includes the plural, and use of the plural number includes the singular."

**{15}** The State argues that Section 12-2A-5(A) of the USRCA does not apply to the felon in possession statute, Section 30-7-16. The State focuses our attention on Section 12-2A-1(B) of the USRCA, which provides, in pertinent part, that the USRCA applies to "a statute enacted or rule adopted on or after [the USRCA's] effective date." The State observes that the USRCA took effect in 1997, *see* 1997 N.M. Laws, ch. 173, § 22, after the Legislature enacted the original version of the felon in possession statute in 1981. *See* 1981 N.M. Laws, ch. 225, § 1.

**{16}** In support of its argument, the State relies on *State v. Garcia*, 2022-NMCA-051, ¶ 9, 517 P.3d 281, in which this Court declined to apply Section 12-2A-5(A) to NMSA 1978, Section 30-31-23 (2021), the statute prohibiting possession of controlled substances. This Court reasoned that the USRCA was only applicable to statutes enacted after 1997 and that the controlled substances statute had been enacted in 1972. *Garcia*, 2022-NMCA-051, ¶ 9. Importantly, however, the phrase at issue in *Garcia*—"a controlled substance"—had not been amended in the years since the statute's enactment. *Compare* 1972 N.M. Laws, ch. 84, § 23, *with* § 30-31-23. In contrast, the specific phrase at issue here—"a firearm"—was amended in 2019, well after the effective date of the USRCA. *See* 2019 N.M. Laws, ch. 253, § 1. *Garcia* is therefore unhelpful in answering the question before us: whether the USRCA applies only to statutes that were *originally* "enacted" before the USRCA's effective date in 1997, or whether it applies to *all* statutes "enacted" after that date, including statutes that amend language that existed before the effective date of the USRCA.

**{17}** We adopt the latter interpretation of Section 12-2A-1(B) because we believe the statutory text clearly supports it and we see no reason not to apply the text as written. *See Olsson*, 2014-NMSC-012, ¶ 18. Section 12-2A-1(B) does not include the word "originally" or any similar limiting word, and no other language in the statute suggests that the Legislature intended to exclude statutes that amend language that was present before the USRCA took effect. We decline to add to the words chosen by the

Legislature because those words make sense without judicial tinkering. *See State v. Torres*, 2006-NMCA-106, ¶ 8, 140 N.M. 230, 141 P.3d 1284. We have considered the possibility that the limiting interpretation that would support the State's position could be implicit in the word "enact"—i.e., that "enact" means only the legislative action that produced the original version of a statute. But we do not find support for that interpretation in the USRCA itself, which does not define "enact." Nor do we find support in dictionary definitions, *see State v. Farish*, 2021-NMSC-030, ¶ 12, 499 P.3d 622, which refer to the act of lawmaking in general and which do not exclude lawmaking that amends existing statutes. *See Enact*, *Black's Law Dictionary* (12th ed. 2024) (defining "enact" as "mak[ing] into law by authoritative act; to pass"); *Enact*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/enact (last visited June 7, 2024) (defining "enact" as "establish[ing] by legal and authoritative act"); *Enact*, *Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/enact (last visited June 7, 2024) (defining "enact," in relevant part, as "to make something law"). We therefore conclude that when the Legislature amended the felon in possession statute—Section 30-7-16—in 2019, the use of the singular and the use of the plural were interchangeable under the USRCA and, as a consequence, the change from "any" to "a" does not imply that the Legislature intended to allow a separate conviction and punishment for each firearm in every case involving multiple firearms, regardless of the facts of the case.

**{18}** In further support of its argument that the change from "any" to "a" is dispositive of the unit of prosecution, the State relies on two cases: *Ramirez*, 2018-NMSC-003, and *Garcia*, 2022-NMCA-051. In our view, neither precedent supports the State's position. We discuss each in turn.

**{19}** The State relies on the *Ramirez* Court's distinction between statutes that are focused on "outcome" versus "course of conduct," *see* 2018-NMSC-003, ¶¶ 45, 51, 54-55, as evidence of Section 30-7-16's unit of prosecution. We believe, however, like the Court in *Ramirez*, that this distinction only contributes to the ambiguity of the felon in possession statute. In *Ramirez*, our Supreme Court interpreted NMSA, 1978, Section 30-6-1(D)(1) (2009), which criminalizes "causing or permitting a child" to be abused. *Ramirez*, 2018-NMSC-003, ¶¶ 44-58. Attempting to define the unit of prosecution, the *Ramirez* Court noted that "there are two equally valid ways of thinking about the unit of prosecution for [the] statute: either by conduct or by outcome." *Id.* ¶ 55. The Court reasoned that the unit of prosecution for "Section 30-6-1(D)(1) is bound up in the verbs 'causing' or 'permitting,'" suggesting that the statute "prohibit[s] a course of conduct." *Ramirez*, 2018-NMSC-003, ¶ 51. However, an alternative reading of the statute—which "contains a direct object that is the recipient of the actions of Section 30-6-1(D)(1)'s verbs, and that direct object is a singular noun"—suggests that the unit of prosecution could be "by child." *Ramirez*, 2018-NMSC-003, ¶ 52 (emphasis omitted). Because two equally valid ways of interpreting the statute existed, the Court "conclude[d] that the statutory language is ambiguous as to the unit of prosecution." *Id.* ¶ 55.

**{20}** Here, the State contends that the felon in possession statute "does not contain language similar to that in *Ramirez* evidencing that the Legislature intended a unit of

prosecution that is based on conduct" and that we should therefore hold that Section 30-7-16 criminalizes the outcome of the unlawful act—possession—and that the statute provides for a separate conviction and punishment for each firearm possessed. We are not persuaded.

**{21}** Section 30-7-16(A) makes it illegal for a felon "to receive, transport or possess a firearm"—i.e., a person commits this crime when they complete the act of receiving, transporting or possessing a firearm. Like the statute at issue in *Ramirez*, the felon in possession statute is bound up in enumerated verbs: to receive, to transport, and to possess. However, it also contains a direct object that is the recipient of those verbs' action: a firearm. Arguably, both conduct and outcome are at issue in the plain language of the statute; the act of possession is both the illegal conduct and the unlawful outcome. We disagree with the State that we should adopt the outcome-focused interpretation of the statute. Instead, like in *Ramirez*, we believe that the conduct-outcome distinction does not provide clarity in deciphering the unit of prosecution for Section 30-7-16.

**{22}** Turning to the second case relied upon by the State, we decline to apply *Garcia* because we conclude that its reasoning is based on a factual predicate not present here. In *Garcia*, this Court interpreted Section 30-31-23, the statute prohibiting possession of a controlled substance. *See Garcia*, 2022-NMCA-051, ¶¶ 4-10. Section 30-31-23(A) states, "It is unlawful for a person intentionally to possess a controlled substance." Importantly, this Court defined the unit of prosecution as "each *distinct* controlled substance." *Garcia*, 2022-NMCA-051, ¶ 6 (emphasis added). Relying on *Ramirez*, this Court reasoned that "a statute containing a singular direct object that is the recipient of the action in the statute supports the conclusion that the Legislature intended the unit of prosecution to be each individual object." *Garcia*, 2022-NMCA-051, ¶ 6. The *Garcia* Court "[held] that if the [s]tate can prove a defendant simultaneously possessed *distinct controlled substances*, a defendant can be charged and convicted for each *distinct* controlled substance in [their] possession." *Id.* (emphasis added). Because the state was able to prove that the defendant possessed both heroin (a Schedule I controlled substance) and methamphetamine (a Schedule II controlled substance), double jeopardy principles did not prohibit the defendant from being separately convicted and punished for two counts of possession. *Id.* ¶ 10. Additionally, as the *Garcia* Court noted, criminalizing possession of each distinct substance is consistent with our case law. *Id.* ¶ 7 (citing *State v. Smith*, 1980-NMSC-059, ¶ 11, 94 N.M 379, 610 P.2d 1208 (allowing multiple prosecution for trafficking "four separate drugs") and *State v. Quick*, 2009-NMSC-015, ¶¶ 21-22, 146 N.M. 80, 206 P.3d 985 (holding that two possession-based convictions violated double jeopardy when they involved the same drug)).

**{23}** Unlike *Garcia*, this case involves possession of two of the *same* type of item identified as contraband in the statute. Defendant was charged with possession of two firearms, both described as "handguns" in the criminal information. *Garcia* might be apt if Defendant was charged with one count of possessing a "firearm" and one count of possessing a "destructive device"—such as a bomb, grenade, or mine—which is a

distinct item of contraband under the statute. *See* § 30-7-16(A), (E)(1)(a). Because this case involves possession of two of the same type of item that the statute identifies as contraband, unlike in *Garcia*, the use of a singular direct object in the statute is not dispositive in this case.

**{24}** Having concluded that the plain language of the statute is ambiguous as to its unit of prosecution, we must resort to the use of other tools of statutory construction in the hope of discerning legislative intent. *See Benally*, 2021-NMSC-027, ¶ 27 ("[W]e do not confine our analysis to the language of the statute, . . . but also consider [the statute]'s legislative history, purpose, and the quantum of punishment prescribed.").

**B.      Legislative History**

**{25}** In support of its argument that the legislative history defines the intended unit of prosecution, the State again relies on the 2019 statutory amendment, which changed "any firearm" to "a firearm," as evidence of a desire by the Legislature to define the unit of prosecution as each individual firearm. The State reframes its point, contending that the Legislature would have been aware of the "singular direct object" language used in *Ramirez* and therefore the use of "singular language" when amending the statute was a "conscious choice" to separately penalize the possession of each firearm.

**{26}** This version of the argument is no more persuasive than the version we have already rejected. For the reasons we have explained, the singular-plural distinction on which the State relies does not clarify the unit of prosecution. The *Ramirez* Court's use of "singular direct object" does not apply in the context of Section 30-7-16, and the singular and plural are interchangeable under the USRCA. Considering the ambiguity discussed above regarding the singular and plural in the plain language of the statute, we again decline to rely solely on the change from "any" to "a" as evidence of the Legislature's intent regarding the unit of prosecution. We do not believe that this amendment sheds any light on whether the Legislature intended to alter the unit of prosecution.

**{27}** The dissent opines that the 2019 Legislature must have amended the statute in response to *Ramirez*. *See dissent* ¶¶ 44-45. Although we agree with the dissent that we are required to presume that the Legislature was aware of *Ramirez*, we disagree with the dissent about the ramifications of that presumption. As we have explained, we understand *Ramirez* to say only that "a" is singular when it refers to the victim of a crime. We presume that the Legislature was aware of that limited conclusion and the basis for it: a firmly established principle about how to determine the unit of prosecution when the statute uses a singular object to refer to a victim. *See Ramirez*, 2018-NMSC-003, ¶ 53. The dissent appears to presume that the Legislature was *unaware* of this limitation in *Ramirez*—i.e., that the Legislature read *Ramirez* to apply to all types of crimes, regardless of whether they have victims. We respectfully disagree. *Ramirez* says nothing about whether "a" is singular or plural when used in the context of crimes that involve a number of objects, rather than a number of victims. We therefore decline to presume that the Legislature read *Ramirez* as resolving a question never considered

by our Supreme Court: whether the use of "a" clearly defines the unit of prosecution when the crime involves possession of contraband such as firearms. *See Fernandez v. Farmers Ins. Co. of Ariz.*, 1993-NMSC-035, ¶ 15, 115 N.M. 622, 857 P.2d 22 ("The general rule is that cases are not authority for propositions not considered." (internal quotation marks and citation omitted)).

## C.      Legislative Purpose

**{28}**    The purpose of Section 30-7-16 is "to protect society by prohibiting the possession of firearms by felons." *State v. Calvillo*, 1991-NMCA-038, ¶ 6, 112 N.M. 140, 812 P.2d 794. The State argues that "[s]ociety would be better protected by punishing the possession of a firearm by a felon on a per firearm basis because it would deter felons from possessing more than one firearm and more firearms could lead to more harm to society." We are not persuaded.

**{29}**    Although we acknowledge that Section 30-7-16 was designed, at least in part, to deter people who have been convicted of felonies from possessing firearms, nothing in the language or history of the statute or in the precedent interpreting it suggests that the Legislature was especially concerned about deterring the accumulation of multiple firearms. We decline to speculate about the Legislature's intent on this point, just as our Supreme Court declined to speculate about a closely related point when it sought to discern the unit of prosecution for a similar possession statute. In *Benally*, 2021-NMSC-027, ¶ 1, the Court considered the unit of prosecution for NMSA 1978, Section 30-22-16 (1986), which prohibits possession of a deadly weapon by a prisoner. The Court "agree[d] that one goal of the statute is to minimize the availability of weapons in a prison facility" but "[did] not agree that this goal establishe[d] the intended unit of prosecution." *Benally*, 2021-NMSC-027, ¶ 30. Importantly, the *Benally* Court pointed out that "the [s]tate's argument assumes that the Legislature was specifically concerned about a single prisoner's accumulation of deadly weapons; but there is no indication that such hoarding was of particular concern." *Id.* The Court reasoned that "nothing presented suggests that the Legislature was more concerned about a single prisoner's accumulation of multiple weapons than it was concerned about other possible scenarios, such as multiple prisoners possessing their own weapons individually." *Id.* The Court ultimately held that the legislative purpose of the statute did not provide guidance on the unit of prosecution. *Id.* Because we conclude that our Supreme Court's reasoning applies with equal force to the possession statute at issue here, we do not believe that the legislative purpose provides clarity regarding the unit of prosecution.

## D.      Quantum of Punishment

**{30}**    Section 30-7-16 defines the applicable quantum of punishment as a third degree felony which carries a basic sentence of three years, *see* § 30-7-16(B) (stating "[a] felon found in possession of a firearm" is guilty of a third degree felony); NMSA 1978, § 31-18-15(A) (2024) (requiring a three year basic sentence for third degree felonies), unless the individual has been convicted of a violent felony, in which case the basic sentence is six years, *see* § 30-7-16(C). The State argues that "[r]ecent amendments to Section 30-

7-16 . . . show that the Legislature intended to increase the quantum of punishment" and that this suggests that defining the unit of prosecution by firearm would be in line with the Legislature's desire to impose harsher punishment. The State points to three recent amendments as support for this argument: (1) in 2018, the Legislature increased the penalty under Section 30-7-16 if the person had previously been convicted of a capital felony or serious violent offense, *see* 2018 N.M. Laws, ch. 74, § 4(B); (2) in 2020, violations of Section 30-7-16 became third degree felonies instead of fourth degree felonies, *see* 2020 N.M. Laws, ch.54, § 2(B); and (3) in 2022, the Legislature increased the basic sentence to six years for individuals convicted of violent felonies, *see* 2022 N.M. Laws, ch. 56, § 26(C). The State argues that "these amendments establish the intent to increase punishment for felons who possess a firearm [and] . . . are consistent with a unit of prosecution based on the number of firearms possessed because punishing violators on a per firearm basis would lead to additional punishment." Defendant contends, however, that "this legislative history is equally consistent with the [L]egislature's decision that the defendant's prior and present conduct is the focus" of the recent amendments and that the various possible purposes of the amendments only contribute to the statute's ambiguity. We agree with Defendant that whether the Legislature intended to change the unit of prosecution is unclear from the amendments made to the quantum of punishment under Section 30-7-16 in recent years. Although the Legislature has increased the punishment, none of those increases are pertinent to the question here: whether the Legislature intended for the increased punishment to be *multiplied* by the number of firearms in a defendant's possession.

{31}     Because that question is not answered by either the quantum of punishment or any of the other signs of legislative intent that we have discussed, we conclude that a reasonable doubt persists about the Legislature's intended unit of prosecution, and we hold that Section 30-7-16 is "insurmountably ambiguous." *See Benally*, 2021-NMSC-027, ¶ 35. This requires us to apply the rule of lenity in Defendant's favor. *See id.* ¶ 36. We therefore presume that the Legislature did not intend to punish every defendant who possesses multiple firearms separately for each firearm and hold that whether multiple punishments are allowed under Section 30-7-16 depends on the specific facts of each case—whether sufficient indicia of distinctness separate a defendant's acts of possession. In other words, in cases involving multiple firearms, whether multiple punishments are allowed hinges on the second step of the unit of prosecution analysis.

## II.      The District Court Erred by Ruling on the Double Jeopardy Issue Based on the Limited Record at the Time of the Motion Hearing

{32}     The State argues that the district court made a procedural error by reaching the second step of the analysis. Specifically, the State contends that the district court ran afoul of Rule 5-601(C), which allows parties to raise defenses or objections before trial if they are "capable of determination without a trial on the merits." In *State v. Foulenfont*, this Court held that dismissal pretrial is appropriate under Rule 5-601(C) if the district court is considering a "purely legal issue." 1995-NMCA-028, ¶ 6. The State argues that (1) its refusal to stipulate to the facts in its own charging document barred the district court from ruling on Defendant's motion; and (2) the record at the time of the hearing did

not include "enough undisputed facts to determine whether Defendant's acts were separated by sufficient indicia of distinctness." Although we reject the first argument, we accept the second and therefore reverse.

**{33}** We reject the State's first argument because precedent establishes that the "undisputed facts" necessary for a *Foulenfont* motion can be "stipulated to by the [s]tate *or* alleged in the indictment or information." *State v. Pacheco*, 2017-NMCA-014, ¶ 10, 388 P.3d 307 (emphasis added). This means that the state's mere refusal to stipulate to the facts in its own charging document does not always bar a district court from ruling on a double jeopardy issue before trial. *See id.* In other words, if the facts are not stipulated to by the state, the factual predicate alleged in the charging document may—in some circumstances—suffice to narrow the issue to a purely legal one such that a pretrial ruling on the merits of a motion is permissible. *See Foulenfont*, 1995-NMCA-028, ¶ 6. The question is therefore not simply whether the parties have stipulated to the facts, but instead whether the state pointed to any practical purpose that would be served by an evidentiary hearing or a trial. *See id.* (holding that when the state did not object to the defendant's characterization of the facts or proffer additional evidence, it "failed to point out any practical purpose that would have been served by an evidentiary hearing or . . . a trial on the merits"); *State v. Rendleman*, 2003-NMCA-150, ¶ 31, 134 N.M. 744, 82 P.3d 554 (holding that dismissal was appropriate where "no practical purpose would be served by a trial on the merits"), *overruled on other grounds by State v. Myers*, 2009-NMSC-016, ¶ 32, 146 N.M. 128, 207 P.3d 1105.

**{34}** That is the question raised by the State's second argument, and our answer is that there was a practical purpose for holding an evidentiary hearing or trial: to ensure that the ruling on Defendant's motion was based on all facts arguably pertinent to determining whether Defendant's conduct was distinct or unitary. To make that determination, the district court was required to consider whether sufficient indicia of distinctness established that Defendant engaged in two acts of possession. *See Benally*, 2021-NMSC-027, ¶¶ 17-18. The indicia for weapons possession charges are: (1) the timing of the gaining of possession of the weapons, (2) the spacing between the weapons, (3) the quality or nature of the weapons, and (4) the results of the possession. *Id.* ¶ 37. Importantly, the record does not adequately address some of these indicia.

**{35}** For example, as to timing, although Defendant is correct that the criminal complaint states that the firearms were found during the same search, it is unclear whether Defendant *gained* possession of the firearms at the same time or at different times. Evidence that Defendant gained possession at different times might support the conclusion that Defendant engaged in distinct acts of possession. *See id.* ¶ 38 (observing that the timing did not establish distinct conduct because "no evidence suggested that [the d]efendant came into possession of the weapons at different times"). Because the record left "room for additional factual development," *State v. Fernandez*, 2007-NMCA-091, ¶¶ 5, 9, 142 N.M. 231, 164 P.3d 112, the State should have been afforded the opportunity to marshal and present additional evidence to establish that Defendant acquired the guns at different times.

**{36}** The State also should have been afforded the opportunity to present evidence regarding the results of Defendant's possession of the two guns. *See Benally*, 2021-NMSC-027, ¶ 37. Defendant contends that the only result of the acts was the possession itself of the two guns, and that "we cannot reasonably infer that [Defendant's] constructive possession of the two firearms in his bedroom was more dangerous than his constructive possession of only one." But the question before us here is not whether such an inference is reasonable based on the facts in the criminal complaint; it is whether such an inference might be possible after the presentation of evidence. Whether possession of multiple weapons poses a greater danger than possession of a single weapon hinges on the specific evidence in each case, as our Supreme Court recognized in *Benally*. There, the state contended that each weapon possessed by the defendant "increase[d] the risk of harm in [the prison], and thus . . . the possession of 'each additional weapon' should itself be considered a distinct offense." *Id.* ¶ 41. The Court "agree[d] that the Legislature may have intended to authorize multiple punishments when a defendant's possession of a deadly weapon had either the objective or result of a distinct decrease in prison safety," and the Court cited the example of a person who planned to use both weapons at once or distribute the weapons to others. *Id.* ¶ 42. But the Court observed that there was no evidence of that sort of objective or result. *Id.* ¶ 43. In the absence of such evidence, the Court concluded that the defendant's case "[was] not a case of the hypothetical dual-wielding or stockpiling defendant." *Id.* The Court therefore could not "reasonably infer that [the d]efendant's constructive possession of the two weapons . . . was more dangerous than his constructive possession of only one." *Id.* Here, the criminal complaint did not indicate whether Defendant planned to use the two firearms simultaneously or whether he was stockpiling the weapons in order to distribute them, and the parties did not address those factual questions by entering into stipulations or by presenting evidence. This is a gap in the record—one that might be filled during an evidentiary hearing or a trial.

**{37}** Because the record regarding unitary conduct was not adequately developed when the district court granted Defendant's motion, we conclude that the district court erred by ruling on the merits of the motion when it did. At the time of the ruling, there were unanswered questions of fact pertinent to some of the indicia of distinctness. We therefore hold that—without further development of the facts—Defendant's motion did not present a "purely legal issue," *Foulenfont*, 1995-NMCA-028, ¶ 6, resolvable under Rule 5-601(C).

**CONCLUSION**

**{38}** We reverse.

**{39}** **IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**I CONCUR:**

**JANE B. YOHALEM, Judge**

**RICHARD C. BOSSON, Justice, retired, sitting by designation, concurring in part and dissenting in part**

**BOSSON, Justice, retired, sitting by designation (concurring in part and dissenting in part).**

**{40}** Although I concur with the disposition and the majority's application of *Foulenfont*, 1995-NMCA-028, to the facts of this case, I respectfully dissent with regard to the majority's interpretation of Section 30-7-16. In my view, the analysis proposed by the majority, finding the statute to be "insurmountably ambiguous" as to the unit of prosecution, undercuts the clear intent of the Legislature to make the ownership of each individual firearm a separate felony.

**{41}** In 2018, our Supreme Court conducted a similar unit of prosecution analysis in *Ramirez*. In *Ramirez*, 2018-NMSC-003, ¶ 3, the defendant fired a gun into a vehicle with three children inside and was charged with three separate counts of child abuse, contrary to Section 30-6-1(D)(1) (providing that "[a]buse of a child consists of a person . . . causing or permitting a child to be . . . placed in a situation that may endanger the child's life or health"). The defendant argued that the three counts of child abuse constituted a double jeopardy violation under a unit of prosecution theory. *Id.* ¶ 44.

**{42}** Our Supreme Court concluded that there were two ways of construing the plain language of the statute. *See id.* ¶¶ 51-55. First, the statute could be viewed as punishing a specific course of conduct—the act of endangering a child—as evidenced by the fact that "the statute prohibits *causing* or *permitting* a child to be placed in a situation that endangers that child's life or health." *Id.* ¶ 51 ("[T]he unit of prosecution for Section 30-6-1(D)(1) is bound up in the verbs 'causing' or 'permitting.'"). Second, the statute could be construed as punishing specific outcomes—i.e. "*each child* endangered"—as evidenced by the statute's specific reference to "*a child*." *Id.* ¶ 52 (reasoning that "the statute contains a direct object that is the recipient or the actions of Section 30-6-1(D)(1)'s verbs, and that direct object is a singular noun," which indicates that "the unit of prosecution for Section 30-6-1(D)(1) is *by child*"). Under the first interpretation, only one charge could be applied for the singular act of shooting into the vehicle. Under the second, three charges could apply, one for each of the three children present in the car.

**{43}** The Court went on to explain that the use of the singular noun—"a child"—along with policy considerations "support this latter interpretation of the statute," favoring multiple felonies. *See id.* ¶¶ 53-54. However, the Court ultimately concluded that both interpretations were "equally valid ways of thinking about the unit of prosecution" and "the statutory language is ambiguous as to the unit of prosecution." *See id.* ¶ 55.

**{44}** Similar to *Ramirez*, the statute at issue in the present case—Section 30-7-16(A)—can be viewed in terms of punishing either conduct (criminalizing the act of

possessing firearms), or outcomes (criminalizing the ownership of each individual firearm). The majority relies on the same reasoning as *Ramirez* to conclude that both interpretations are equally valid. However, unlike in *Ramirez*, the legislative history of Section 30-7-16 makes the intent of the Legislature clear, or at least clear enough in my mind to make the possession of each gun a separate felony.

**{45}** Section 30-7-16(A) (2018) stated for many years that "[i]t is unlawful for a felon to . . . possess *any* firearm or destructive device." In 2019, subsequent to the publication of *Ramirez*, the subsection of the statute was amended to change the phrase "any firearm" to "a firearm." *See* § 30-7-16(A) (2019). This was done soon after the publication of *Ramirez* in late 2017, which contained the following analysis of Section 30-6-1(D):

> [O]ur Legislature chose not to employ the phrase "any child" or the word "children" in place of "a child." Had it done so, Section 30-6-1(D)(1) would have expressly contemplated that more than one child may be affected by a single course of abuse by endangerment and this, in turn, would suggest that the focus of the statute is the prohibition of conduct towards a particular class of persons. . . . Our Legislature did not do this and instead specifically prohibited the commission of certain acts against a singular and discrete entity: "a child." It is well established . . . that where a statute prohibits the doing of some act to a victim specified by a singular noun, "a person" for example, then "the person" is the unit of prosecution.

*Ramirez*, 2018-NMSC-003, ¶ 53 (citation omitted). *Ramirez* became public in the last days of 2017. The Legislature changed "any firearm" to "a firearm" during the 2019 legislative session. During the intervening session in 2018, our state constitution would have precluded as nongermane any amendments to a substantive, nonfiscal statute like Section 30-7-16(A). *See* N.M. Const. art. IV, § 5(B). Accordingly, 2019 would have been the first opportunity for our Legislature to respond to *Ramirez* and incorporate its meaning into Section 30-7-16(A).

**{46}** Out of respect to a separate but equal branch of government, we should presume that the Legislature made the amendment to Section 30-7-16(A) consciously and intentionally, aware of the above language in *Ramirez*. *See State v. Chavez*, 2008-NMSC-001, ¶ 21, 143 N.M. 205, 174 P.3d 988 (providing that our courts "presume[] that the Legislature is aware of existing case law and acts with knowledge of it"); *State v. Morrison*, 1999-NMCA-041, ¶ 11, 127 N.M. 63, 976 P.2d 1015 ("When the [L]egislature amends a statute, we assume that it is aware of existing law."). We should therefore presume that the Legislature intended to rely on the same logic as *Ramirez* when it amended the statute to penalize possession of "a" rather than "any" firearm. In my view, it would be disrespectful of our Legislature for this Court to conclude otherwise.

**{47}** The majority disagrees. First, the majority opinion relies on the logic of *Olsson*, 2014-NMSC-012, ¶ 21, to argue that the word "any" is ambiguous and could refer to either the singular or the plural, thus precluding any meaningful inference from the shift from "any" to "a" in Section 30-7-16(A). I respectfully disagree. We presume that the

Legislature does not amend a statute unless it (1) intends to change existing law, or (2) intends to clarify a statute that is otherwise ambiguous. *See Aguilera v. Bd. of Educ. of Hatch Valley Schs.*, 2006-NMSC-015, ¶ 19, 139 N.M. 330, 132 P.3d 587. Under either analysis, the change from "any" to "a" has meaning: either it represents a shift from the plural "any" to the singular "a," or it resolves the ambiguity in the term "any" by amending it to the singular "a." Any other interpretation renders the change meaningless and obsolete, which is contrary to our principles of statutory interpretation. *See Diamond v. Diamond*, 2012-NMSC-022, ¶ 29, 283 P.3d 260 (providing that our courts "must assume the [L]egislature chose its words advisedly to express its meaning unless the contrary intent clearly appears" (internal quotation marks and citation omitted)); *Aguilera*, 2006-NMSC-015, ¶ 19.

**{48}** The majority further argues that, even if there is a distinction between the singular "a" and plural "any," that such distinction is not dispositive as to the unit of prosecution. The majority cites *Torres*, 2022-NMSC-024, ¶ 22 and *Neal*, 2007-NMCA-086, ¶ 20. However, neither case stands for the proposition that singular or plural language *cannot* be dispositive, only that it is not necessarily so. *See Torres*, 2022-NMSC-024, ¶ 22 ("[T]he use of singular or plural language is *not always* dispositive as to legislative intent." (emphasis added)); *Neal*, 2007-NMCA-086, ¶ 20 ("[T]he fact that a statute does not list items as plural *does not necessarily* establish that it does not apply to the plural." (emphasis added)). Furthermore, *Torres* explicitly provides that "[a]s a general principle, the use of singular or plural language in a criminal statute may, in some circumstances, clarify the intended unit of prosecution." 2022-NMSC-024, ¶ 22.

**{49}** Additionally, recent cases have found the issue of singular versus plural language to be dispositive. In *Garcia*, 2022-NMCA-051, this Court analyzed the unit of prosecution for Section 30-31-23 (2011), which criminalized the intentional possession of *a* controlled substance. This Court found the singular language within the statute to be dispositive, holding that "the unit of prosecution for Section 30-31-23 is each distinct controlled substance." *Garcia*, 2022-NMCA-051, ¶ 8. Accordingly, the defendant could be separately charged for "the simultaneous possession of two distinct controlled substances," namely heroin and methamphetamine. *Id.* ¶ 10. The majority attempts to distinguish *Garcia* from the present case on a factual basis by drawing a distinction between the category of "firearms" and the category of "controlled substances." Specifically, the majority argues that Defendant was charged with possession of two of the same type of item—firearms—whereas in *Garcia* the defendant was charged with possession of two *distinct* types of contraband. It is unclear from where the majority draws this distinction, but given the broad descriptions, both of what constitutes a "firearm" and what constitutes a "controlled substance," I do not find the distinction meaningful. *Compare* § 30-7-16(E)(4) (defining a "firearm" as "any weapon that will or is designed to or may readily be converted to expel a projectile by the action of an explosion or the frame or receiver of any such weapon"), *with* § 30-31-2(E) (defining a "controlled substance" as "a drug or substance listed in Schedules I through V of the Controlled Substances Act or rules adopted thereto").

**{50}**    Finally, the majority attempts to overcome the distinction between singular and plural language by referencing the USRCA. Specifically, the majority relies on Section 12-2A-5(A) which provides that, when engaging in statutory interpretation, "[u]se of the singular number includes the plural, and use of the plural number includes the singular." Again, I do not find the argument persuasive. The principles of the USRCA apply to a statute "unless . . . the context of its language requires otherwise or the application of [the Act] to the statute or rule would be infeasible." Section 12-2A-1(B). Here, if the singular includes the plural and vice versa, the change from "any" to "a" in Section 30-7-16(A) would be rendered meaningless, in direct contravention of our established canons of statutory construction. *See State v. Johnson*, 1998-NMCA-019, ¶ 22, 124 N.M. 647, 954 P.2d 79 (providing that our courts "have always rejected an interpretation of a statute that would make parts of it mere surplusage or meaningless" and it is the role of the courts "to construe ambiguous language and to give it sensible construction"). In such a circumstance, Section 12-2A-5(A) should not apply. *See* § 12-2A-1(B). After all, our canons of statutory interpretation are useful tools to assist our courts in recognizing and enforcing the goals of the Legislature. *See Torres*, 2006-NMCA-106, ¶ 8 ("Our primary goal when interpreting statutory language is to give effect to the intent of the [L]egislature.") They should not be viewed as edicts to be mandatorily applied in such a fashion so as to require the courts to reach conclusions and outcomes clearly contrary to the Legislature's otherwise apparent intent.

**{51}**    In summary, our Legislature amended the statute so that it now criminalizes possession of "*a*" firearm as opposed to "*any*" firearm. *Compare* § 30-7-16(A) (2018), *with* § 30-7-16(A) (2019). There is only one interpretation that gives effect and meaning to this change: that the Legislature intended for a felon unlawfully in possession of a firearm to be subject to a charge for each individual firearm possessed. Any other interpretation disregards the change, when, in my view, the applicable law is to the contrary.

**{52}**    Experience informs me that the legislative process is, by its nature, an imperfect one. As a result, all statutes possess a certain amount of ambiguity. It is the role of our courts, when possible, to resolve that ambiguity and "give effect to the Legislature's intent." *See State v. Hall*, 2013-NMSC-001, ¶ 9, 294 P.3d 1235.

**{53}**    Finally, although this issue may not arise again in the context of this case given the majority's disposition, it is an issue that will likely arise again in our jurisprudence given the prominence of felon-in-possession prosecutions. As such, it is an issue "capable of repetition yet evading review." *See Republican Party of N.M. v. N.M. Tax'n & Revenue Dep't*, 2012-NMSC-026, ¶ 10, 283 P.3d 853. It is an issue from which both our entire criminal law bar and judiciary would benefit from intervention—and clarification—on the part of our Supreme Court.

**RICHARD C. BOSSON, Justice, retired**
**Sitting by designation**